{¶ 1} This appeal arises from an order issued by the Mahoning County Court of Common Pleas, Domestic Relations Division, finding Ronald George Ziegler ("Appellant") in contempt of court in a divorce case. Appellant was held in contempt for failure to obey a court order requiring him to sign the documents needed to sell the marital residence. Appellant was incarcerated and was able to purge his contempt by signing the documents. During the pendency of this appeal Appellant signed the necessary documents, but continues to pursue this appeal on issues that arose prior to his being held in contempt and that are not related to his contempt verdict. The parties have narrowed the issue on appeal as follows: whether Appellant received a fair opportunity to litigate the question of Appellant's claimed setoffs from the sale of the marital residence. The record clearly shows that Appellant had opportunities to litigate his claims of credits and setoffs and that he failed to prosecute a prior appeal that could have resolved any errors in the relevant judgment entries. Because this issue is now untimely, the decision of the trial court is affirmed.
 {¶ 2} This appeal involves an order finding Appellant in contempt of court. A finding of contempt and the imposition of a sanction for contempt together constitute a final appealable order. Chain Bike Corp.v. Spoke `N Wheel (1979), 64 Ohio App.2d 62, 64, 18 O.O.3d 43,410 N.E.2d 802; Cooper v. Cooper (1984), 14 Ohio App.3d 327, 14 OBR 394,471 N.E.2d 525, paragraph one of the syllabus.
 {¶ 3} On August 25, 1997, the parties were granted a divorce by the Mahoning County Court of Common Pleas, Domestic Relations Division. The decree found that the parties had marital assets worth $69,523.42. The bulk of this amount came from the value of the marital residence at 1883 Lynn Mar Avenue, Poland, Ohio. The parties stipulated that the house was worth $74,900, and they also stipulated that $23,867.40 of that amount was Appellant's separate property. The remaining $51,032.60 constitutes a marital asset. The remaining marital assets, valued at $18,490.82, consisted of investments, insurance policies, motor vehicles, and household furnishings. The court also found marital debt of $15,006.39, leaving the net marital assets at $54,517.03.
 {¶ 4} The court attempted to allocate this value equally between the parties. (8/25/97 Decree, p. 9.)
 {¶ 5} The trial court gave Appellant first priority to be reimbursed for his $23,867.40 interest in the proceeds of the sale of the marital residence.
 {¶ 6} The court gave Appellant thirty days, expiring on September 25, 1997, to exercise an option to purchase the marital home at the stipulated value of $74,900. If he purchased the home, Appellee was entitled to receive a further distribution from Appellant of $14,758.52 as her share of the marital assets.
 {¶ 7} The parties did not file an appeal of the divorce decree.
 {¶ 8} On November 13, 1997, the court filed an Addendum to Judgment Entry of Divorce, in response to motions for relief from judgment filed by the parties. The court made a number of adjustments to the initial distribution order.
 {¶ 9} The parties did not appeal this judgment entry.
 {¶ 10} On November 26, 1997, Appellant filed a document he styled as a Motion for Court Order of Credits Against Equity and Amounts Due and Owing to Plaintiff. Appellant argued that Appellee prevented him from inspecting the marital residence and that Appellee removed or disposed of certain items of personal property that belonged to Appellant.
 {¶ 11} On March 23, 1998, Appellant renewed the motion for credits and offsets, adding a request that Appellee pay him rent for the marital residence and reimburse him for state and federal taxes. A hearing on the motion took place on May 8, 1998. Appellant did not provide a transcript of the hearing for this appeal.
 {¶ 12} On July 1, 1998, Appellee filed a contempt motion against Appellant for failure to follow the November 13, 1997, orders of the court.
 {¶ 13} A July 21, 1998, Judgment Entry set forth the results of the May 8, 1998, hearing. The court ordered both parties to comply with the prior judgment entries within thirty days. "At the conclusion of each party complying with the terms of the Judgment Entry, this matter will be reconsidered by the Court pursuant to motion by either party as to any damages that are alleged to be due and owing by one party to the other." The court essentially postponed making a final ruling on Appellant's motion for credits and offsets.
 {¶ 14} A hearing on the contempt motion was held on February 11, 1999, but the transcript of that hearing was not provided by Appellant. The court filed its ruling on March 15, 1999. It is this judgment entry that resolves the issues raised in the present appeal. The relevant portions of the judgment entry are as follows:
 {¶ 15} "2. That the record before this Court substantiates Plaintiff's argument that Defendant has had ample time to exercise his option to purchase the marital residence and has prevented the Plaintiff from being able to place the marital residence for sale as previously ordered by this Court.
 {¶ 16} "3. That while the Defendant argues that he has paid real estate taxes as well as home owner's insurance for the marital residence, said costs were the result of his desire to purchase said marital residence, and the Plaintiff has also incurred expenses associated with the daily maintenance of the marital residence, for which she is not seeking reimbursement.
 {¶ 17} "4. Defendant's request to order the Plaintiff to pay rent in the amount of $500.00 per month from August of 1997, is overruled.
 {¶ 18} "6. That the marital residence located at 1883 Lynn Mar, Poland, Mahoning County, Ohio 44514, shall be placed for sale by the Plaintiff [Appellee] * * *.
 {¶ 19} "7. That any proceeds from the sale of the marital residence will be utilized to satisfy Realtor fees, costs of sale, and any IRS liens that have been placed on the marital residence. All remaining proceeds shall be placed in the trust account of Plaintiff's counsel and a hearing shall be scheduled before this Court to address the distribution of the proceeds based upon the prior Supplemental Entry of this Court dated November of 1997, together with consideration for any additional payments on the IRS tax deficiencies made by the parties subsequent thereto.
 {¶ 20} "11. At the time of the sale of the residence, both parties shall present to this Court documentation evidencing their payment against the IRS delinquencies so the Court can assess the necessary credits and offsets to adjust, if necessary, the distribution set forth in the Supplemental Judgment Entry of November of 1997."
 {¶ 21} This judgment entry clearly rejects Appellant's request for credits and offsets, except with regard to payments made to the IRS. The judgment entry rejects Appellant's request that Appellee pay rent for the marital residence for any time period. The judgment also terminated Appellant's option to purchase the marital residence.
 {¶ 22} Appellant did not file an appeal of the March 15, 1999, entry. Instead, on April 27, 1999, Appellant filed a motion seeking to vacate the March 15, 1999, judgment entry.
 {¶ 23} On July 27, 1999, Appellant filed another motion to determine all amounts that the parties owed each other so that Appellant could purchase the marital residence. A hearing was set for August 5, 1999. It is not clear whether this hearing took place.
 {¶ 24} After a hearing on October 13, 1999, the court ruled that, "this [c]ourt has identified a possible error in the Addendum to Judgment Entry of Divorce and Division of Assets, which must be reconciled prior to a ruling on Defendant's pending [m]otion." The court set another hearing for November 4, 1999. The record does not indicate what took place at that hearing.
 {¶ 25} On December 10, 1999, Appellant filed another motion to vacate all prior judgment entries allowing Appellee to sell the marital home, and requested payment from Appellee for personal property, taxes, and other expenses.
 {¶ 26} On December 15, 1999, Appellee filed a motion for emergency relief, stating that Appellant continued to hold all the marital assets (other than the house), refused to liquidate them and refused to allow the marital residence to be sold. Appellee stated that she had a possible buyer for the house and asked the court to help facilitate the sale by ordering Appellant to cooperate.
 {¶ 27} In a December 15, 1999, Judgment Entry, the court, "decreed that Plaintiff shall go forward with the sale of the marital residence * * *." All proceeds were ordered deposited into a trust account controlled by Appellee's attorney. The court also held that, "[c]ounsel for both parties shall complete liquidation of all assets pursuant to the prior [o]rders of [c]ourt. Both parties shall promptly and full[y] cooperate with the liquidation process and any party who fails to cooperate shall be subject to a finding of contempt of [c]ourt * * *." It is clear from this judgment entry that the trial court overruled Appellant's prior motions to vacate.
 {¶ 28} On December 17, 1999, one day before the closing of the sale of the marital residence, Appellant filed a notice of appeal of the December 15, 1999, judgment entry. This was designated as Appeal No. 99 CA 322. On May 23, 2000, this Court filed a journal entry stating that the appeal would be dismissed due to lack of prosecution if assignments of error were not filed by June 1, 2000. Appellant failed to take any action, and this Court sua sponte dismissed the appeal by journal entry dated July 20, 2000.
 {¶ 29} On March 1, 2000, Appellee filed in the trial court a Motion to Compel Defendant to Execute Releases. Action on this motion was held in abeyance until the pending appeal was resolved.
 {¶ 30} A status conference was held on or about October 26, 2000. After conference, the trial court issued a judgment entry stating:
 {¶ 31} "Case called for status conference. Both parties have outstanding motions and claims for payments and setoffs. Case to proceed to hearing on the merits of the claims of each party on the 15th day of December 2000 at 1:00 o'clock p.m. Defendant shall submit all evidence of any claim or setoff to plaintiff's counsel on or by the 15th day of November 2000 at 4:30 o'clock p.m. including all proof of retained accounts."
 {¶ 32} The hearing was continued to Thursday, March 15, 2001. At the hearing, the following dialogue took place between the trial judge and Appellant's counsel:
 {¶ 33} "THE COURT: Case of Ziegler versus Ziegler, and the matter comes on today by reason of an order to sell real estate. Here is what's going to happen, as I understand it. Mr. Ziegler will make available, through counsel, the sum of $13,000.
 {¶ 34} "MR. ZENA [Appellant's counsel]: And that includes, just so we are clear, that includes all claims.
 {¶ 35} "THE COURT: All claims.
 {¶ 36} "MR. ZENA: All claims.
 {¶ 37} "THE COURT: All claims. $13,000; that will be conveyed to Mrs. Ziegler no later than Wednesday at noon of next week [March 21, 2001]. * * * Mr. Ziegler will then be in a position to take over the real estate, which is his desire, as I understand it. The real estate will be subject to certain claims, not the which [sic] is real estate claims, personal claims. Whatever those claims are, he would hold harmless, indemnify and defend Miss Ziegler. Between now and then he will, likewise, seek to secure releases for Miss Ziegler. If that does not happen, the property will be sold. It's my interpretation from reviewing the Court's order that the Court ordered that property sold. I respect that Mr. Zena objects to my opinion and preserves that objection for the record.
 {¶ 38} "MR. ZENA: Yes.
 {¶ 39} "THE COURT: However, it's my opinion that the order is clear; that it has been pending; that the sale has been imminent; that it should go forward; that to stop the sale from going forward, unless otherwise agreed by and between the parties as previously outlined, would be in direct contempt of the Court because it would stop the Court from following and effectuating its order. * * * I would, therefore, say that Mr. Ziegler would be taken into custody of the Mahoning County Sheriff's office to therein reside until he purges himself from contempt by signing the deed." (3/15/01 Tr., pp. 3-4.)
 {¶ 40} The trial judge prepared a commitment order declaring Appellant in contempt of court until he signed the deed to 1883 Lynn Mar Avenue. The commitment order was signed on March 15, 2001, but was not filed in order to give Appellant an opportunity to comply with the court's prior orders. Apparently Appellant neither paid the $13,000 nor cooperated in the sale of the property, because the order was filed on March 21, 2001, and he was taken into custody. Appellant's failure to obey the court's prior orders is confirmed by a motion for emergency relief and a series of affidavits filed by Appellee on March 30, 2001.
 {¶ 41} On March 22, 2001, Appellant filed an appeal of the commitment order.
 {¶ 42} Appellant was in jail until this Court, on October 11, 2001, issued an order granting a ten-day stay of execution of the contempt and commitment order. The purpose of the stay was to remand the case to the trial court so that the parties could enter into stipulations concerning a permanent stay of execution and to clarify the issues in dispute in this appeal. During the remand to the trial court, Appellant executed a quit claim deed for 1883 Lynn Mar Avenue.
 {¶ 43} On October 23, 2001, the trial court filed an Agreed Judgment Entry. Appellant waived any remaining disputed issues in regard to the sale of the marital residence. The entry states: "[t]he parties further acknowledge that the issue remaining on appeal by Appellant is how the proceeds from the sale of the marital residence are to be allocated." (10/23/02 J.E., p. 2.)
 {¶ 44} The purpose of the limited remand accomplished, the appeal is now before this Court for resolution.
 {¶ 45} Despite Appellant's stipulation as to the issue on appeal, he has presented a completely different argument in his brief. Appellant did not prepare an assignment of error, but his general argument is that he was never given an opportunity to present evidence to prove Appellee owed him more in offsets and credits than he owed Appellee for her equitable interest in the marital property. Appellant points to no caselaw, statute, or transcript to support his position. Appellant does cite two cases, but they are not related to the "argument" presented on appeal.
 {¶ 46} Appellant has failed to prosecute any appeal of the relevant final appealable judgment entries in this case. Failure to timely raise errors that may be raised on appeal constitutes a waiver of the right to challenge those errors. State ex rel. Spencer v. E.Liverpool Planning Comm. (1999), 85 Ohio St.3d 678, 680, 710 N.E.2d 1129. The only previous appeal Appellant filed was dismissed for failure to prosecute. The order now on appeal is clearly moot because Appellant obeyed the order that caused him to be incarcerated for contempt, and Appellant has stipulated that he, "does not dispute the prior Court Order, which enables Johanna Ziegler to arrange for the sale of * * * [the marital] residence * * *." (10/23/01 J.E.) Furthermore, Appellant stipulated that the issue to be resolved in this appeal is the manner in which the proceeds of sale should be distributed, but he has failed to present any argument on appeal on this issue.
 {¶ 47} Although the parties have agreed between themselves concerning the issue on appeal, "[i]t is well established that parties cannot confer jurisdiction over subject matter by consent or acquiescence." Thorley v. Thorley (1991), 77 Ohio App.3d 275, 277,602 N.E.2d 268. It has been said many times that a failure to file a timely notice of appeal pursuant to App.R. 4(A) is a jurisdictional defect. See e.g., State ex rel. Boardwalk Shopping Ctr., Inc. v. CuyahogaCty. Court of Appeals (1990), 56 Ohio St.3d 33, 36, 564 N.E.2d 86. Even though the parties may have agreed to revisit issues raised in prior final, appealable judgment entries, they cannot by agreement overcome the fact that these judgment entries were not timely appealed and that this Court has no jurisdiction to review an order that has not been properly appealed.
 {¶ 48} It is also clear that Appellant has had numerous opportunities to litigate whether or not he is owed credits or offsets from Appellee. The record indicates that hearings occurred on May 8, 1998, February 11, 1999, August 5, 1999, October 13, 1999, November 4, 1999, and March 15, 2001. While Appellant has filed no transcripts in the majority of these hearings, it is apparent that the issue of credits and offsets was part of the subject matter of all these hearings.
 {¶ 49} Furthermore, Appellant could have raised these matters during the divorce proceedings or as part of his initial request for relief from judgment from the divorce decree. Appellant did not file appeals of either of these judgment entries.
 {¶ 50} The most damaging part of the record from Appellant's perspective is the dismissal of Appellant's prior appeal in Appeal No. 99 CA 322. One of the judgment entries under review in that appeal stated, in no uncertain terms, that Appellant was not owed any credits, offsets, rents, or any other types of reimbursement from Appellee. (3/15/99 J.E.) If Appellant was concerned that he did not have a proper chance to submit evidence, he was required to bring that matter to the Court during the prior appeal. Instead, the appeal was dismissed due to lack of prosecution.
 {¶ 51} Finally, the trial court's notice to the parties announcing the March 15, 2001, review hearing clearly stated that the purpose of the hearing was to give the parties a final chance to submit all evidence relating to setoffs and credits. The transcript of that hearing is the only transcript that has been prepared for this appeal. It is clear from the transcript that Appellant presented no evidence, and stipulated that Appellee was owed $13,000 from the sale of the house. Appellant's attorney and the court stated numerous times that the $13,000 amount covered "all claims." Even if he presented a timely appeal of this issue, if $13,000 covered all claims, Appellant cannot now argue that there are additional unresolved claims.
 {¶ 52} It is unclear why Appellant has filed this appeal. Appellant concedes that he could and should have been held in contempt. Appellant has failed to present a valid assignment of error on appeal, presents a different "argument" on appeal than stipulated in an Agreed Judgment Entry, has waived every opportunity to challenge prior final judgment entries through direct appeal, failed to prosecute the only appeal he filed, and has failed to provide transcripts of any relevant hearing. The only transcript in the record was filed by Appellee, and it completely contradicts Appellant's assertions in this appeal.
 {¶ 53} We find no merit in Appellant's argument. Appellant has conceded that he was properly held in contempt and has fully obeyed the order that led to his contempt citation. In so conceding, Appellant has rendered the issues in this appeal as moot. The decision of the trial court is affirmed in full.
Judgment affirmed.
Vukovich and DeGenaro, JJ., concur.